Thomas P. Riley, SBN 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel:  626-799-9797
Fax: 626-799-9795
TPRLA@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J Sports Productions, Inc., | Case No. CV 08-1866 SI |
| Plaintiff, | NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT |
| vs. | |
| Bernard Joseph Bronson, et al., | For: Honorable Susan Illston |
| Defendant. | Date: Friday, August 22, 2008 |
| | Time:  9:00 AM |

**TO THE HONORABLE SUSAN ILLSTON, THE DEFENDANT AND**

**HIS ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on Friday, August 22, 2008, at 9:00 AM or as soon thereafter as this matter may be heard by the above entitled United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will present its Application for Default Judgment against Defendant Bernard Joseph Bronson, individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks.

   The Clerk has previously entered the default of said Defendant on or about June 25, 2008. At the time and place of hearing, Plaintiff will present proof of the following matters:

1. Defendant is not an infant or incompetent person, or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940; and,

2. Defendant has not appeared in this action; and,

3. Notice of this Application for Default Judgment by Court and supplemental pleadings were served on said Defendant; and,

4. Plaintiff is entitled to judgment against the Defendant on the claims pled in the complaint. To wit:

A. By contract, Plaintiff paid for the proprietary rights to distribute the *Marco Antonio Barrera III v. Mzonke Fana World Super Featherweight Championship Fight Program* broadcast of April 9, 2005, via closed-circuit television (hereinafter referred to as the "Program").

B. With full knowledge that the Program was not to be intercepted, received, and/or exhibited by entities unauthorized to do so, the above named Defendant, and/or his agents, servants, workmen, and/or employees, did unlawfully intercept, receive and thereafter exhibit the Program at the time of the transmission at the address of the establishment, "Cocina Mexicana a/k/a Smilin Jacks", a food and drink operated by Defendant, and located at 32681 Mission Boulevard, Hayward, California 94544. Please see the concurrently filed Declaration of Affiant.

C. Said unauthorized reception, interception and/or exhibition of the Program by said Defendant was done willfully and for the purpose of direct or indirect commercial advantage or private financial gain.

D. The unauthorized publication or use of communications, such as the transmission for which Plaintiff had the distribution rights, is prohibited by Title 47 U.S.C., Section 605, *et seq.*

E. The unauthorized reception, interception and exhibition of the Program at the address of the Defendant's establishment as described herein, is also prohibited by Title 47 U.S.C. sec. 553, *et seq.*

F.      By said acts of receiving, intercepting and exhibiting the Program at the above-indicated address, Defendant tortuously obtained possession of the Program and wrongly converted same to his own use and benefit.

5.      Plaintiff seeks Judgment in its favor and against the Defendant, in the amount of $100,800.00.  A breakdown of the relief requested under each of the three (3) counts of the Plaintiff's complaint is detailed within the Proposed Order concurrently filed.

6.      By and through this Application, Plaintiff also seeks recovery of its attorneys' fees and relevant costs incurred as provided for pursuant to 47 U.S.C. Section 553, *et seq.* and 47 U.S.C. Section 605, *et seq.*

Respectfully submitted,

Dated:  July 18, 2008                    */s/ Thomas P. Riley*
                                         **LAW OFFICES OF THOMAS P. RILEY, P.C**.
                                         By: Thomas P. Riley
                                         Attorneys for Plaintiff
                                         J & J Sports Productions, Inc.

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Squire, 1114 Fremont Avenue, South Pasadena, California 91030-3227.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 18, 2008, I served:

**NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Bernard Joseph Bronson (Defendant)
32681 Mission Blvd.
Hayward, CA 94544

Ernest L. Anderson, Esquire
Law Offices of Ernest L. Anderson
22693 Hesperian Blvd., Suite 175
Hayward, CA 94541

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 18, 2008, at South Pasadena, California.

Dated:  July 18, 2008                    */s/ Emily Stewart*
                                         **EMILY STEWART**

**NOTICE OF APPLICATION AND APPLICATION**
**FOR DEFAULT JUDGMENT BY THE COURT**
**CASE NO. CV 08-1866 SI**
**PAGE 4**

Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| J & J Sports Productions, Inc., | CASE NO. CV 08-1866 SI |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT |
| vs. | |
| Bernard Joseph Bronson, et al. | |
| Defendant. | |

## INTRODUCTION

Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming.  By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the *Marco Antonio Barrera III v. Mzonke Fana World Super Featherweight Championship Fight Program* of April 9, 2005.  This *Program* included the main event (between Marco Antonio Barrera and Mzonke Fana) along with an undercard (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to as the "*Program*".

Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout United States and its territories, wherein it granted limited public exhibition rights to these entities (sublicensees) for the benefit and entertainment of the patrons within their respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.).

The interstate transmission of the Plaintiff's *Program* was encrypted and made available only to Plaintiff's customers (commercial locations which paid Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the *Program*).

On April 9, 2005 an investigator observed the unlawful exhibition of Plaintiff's *Program* at the Defendant's commercial establishment.  The investigator's observations were later documented in a sworn affidavit now before this Honorable Court. (See Declaration of Affiant.)

On April 8, 2008, Plaintiff filed suit against Bernard Joseph Bronson, individually and d/b/a COCINA MEXICANA A/K/A SMILIN JACKS (hereinafter "Defendant") after Plaintiff's efforts to resolve this matter informally failed.  The thrust of Plaintiff's Complaint alleged that the Defendant, and or his employees and or agents unlawfully intercepted and intentionally exhibited the *Program* at the Defendant's establishment for the purpose of direct or indirect commercial advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as amended, as well as Title 47 U.S.C. § 553.  Plaintiff's complaint also includes a pendant common-law claim of Conversion.

Neither the Defendant nor anyone acting on the Defendant's behalf filed an Answer or any other responsive pleading to Plaintiff's duly served complaint.  Accordingly, on June 25, 2008, following Plaintiff's Request, the Court entered default against the Defendant in this action.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court now enter judgment against the Defendant as prayed forth below.

## DISCUSSION

### PLAINTIFF IS ENTITLED TO ENHANCED STATUTORY DAMAGES IN THIS ACTION

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits**.**"  ***Wright, Miller & Kane, Federal Practice and Procedures***, §2684, p. 4-19-20. The Defendant's default serves as an admission of Plaintiff's well-pled allegations of fact.  ***Danning v. Lavine***, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorneys' fees, and costs to which Plaintiff is entitled from the Defendant for the unauthorized exhibition of Plaintiff's *Program*.

Title 47 U.S.C. Section 605 protects companies such as the Plaintiff against the theft of its proprietary communications such as the instant *Program*.  See, ***International Cablevision, Inc. v. Sykes***, 75 F.3d.123 (2d Circ. 1996), ***Cimenelli v. Cablevision***, 583 F. Supp. 158, 161 (E.D.N.Y. 1984); ***Cablevision Systems v. Seimon***, 767 F.2d 1364 (1985); ***Quincy Cablesystems, Inc. v. Sully's Bar, Inc.***, 640 F. Supp. 1159 (D.Mass. 1986); ***National Subscription Television v. S & HTV***, 644 F.2d 820 (9th Cir. 1981); ***National Football League v. Alley, Inc.***, 624 F. Supp. 6 (S.D. Fla. 1983). The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Title 47 U.S.C. § 553 was designed to provide a remedial scheme for unauthorized reception of cable communication.  ***Home Box Office v. Gee-Cee, Inc.***, 838 F.Supp. 436 (E.D. Mo. 1993). Certain courts have also held a private party plaintiff may recover civil damages pursuant to this statute where end-users violators unlawfully obtained a proprietary broadcast via satellite.

As a starting point, a party aggrieved under the Statutes may, at their discretion, recover either actual or statutory damages.  **§§ 553(c)(3)(A) and 605(e)(3)(C).** Statutory damages may be awarded up to $10,000.00 for each violation.  **§§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).**  Additionally, if the Court determines the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," **the Court may award enhanced damages of up to $100,000.00 for each violation under §605(e)(3)(C)(ii) and $50,000.00 under §553(c)(3)(B)(III).** Because Plaintiff constitutes an aggrieved party under these telecommunications statutes (hereinafter " Statutes") (see §§553 (C)(1) and 605(D)(6)), Plaintiff is entitled to damages from the Defendant.

COCINA MEXICANA A/K/A SMILIN JACKS is a commercial establishment, and could only lawfully obtain the *Program* if Plaintiff had contracted with Defendant for the rights to show the *Program*.  However, this lawful approach was not taken.  Therefore, Defendant must have undertaken specific wrongful actions to intercept an/or receive and broadcast the encrypted telecast.  (See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court concurrently filed with this Memorandum (hereinafter "Plaintiff's Affidavit")).  Since the Defendant must have committed wrongful acts in order to intercept, receive, and broadcast the *Program*, Plaintiff seeks substantial statutory damages from the court in this action.

Statutory damages are appropriate where actual damages are difficult to prove.  ***Lauretex Textile Corp. v. Allton Knitting Mills, Inc***., 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of

adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). In

the instant case, as more fully discussed infra, it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions. Accordingly, it is appropriate for Plaintiff to elect to receive statutory damages in the instant action.

In order to deter the unlawful use of communications such as the *Program*, Congress specifically designed the Statues to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." *Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News* **7**, 5577, 5658; See also *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To reach these ends, the Statues include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications. See *Scott*, 783 F. Supp. At 281; See generally §§ 553(b) and 605(e). Moreover Congress has equated a violation of the Statutes to theft of service. See **1988 U.S. Code Cong. & Admin. News 7**, 5577, 4642-43. In 1988, in an effort to further deter theft, Congress amended the Statues to provide for more severe penalties for violations. *Id.* at 5657.

As set forth within Plaintiff's Affidavit, the Defendant's interception, receipt, and broadcast of the encrypted *Program* was not inadvertent. Both §§ 553(c)(3)(C) and 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section . . . .", as stated by Congress, this type of situation occurs rarely:

> [i]t is not intended that this provision serve in any way as a defense to determination of liability under subsection (a), but rather only as provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

*Cable Communications Policy Act*, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751.

///

///

Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe impact of theft of various wire communications, including closed-circuit programming, such as the *Program*.

As stated in the House Bill:

> "The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire into building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices does not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instances, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it".

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720. Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices. See *U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

Therefore, in light of the above observations, as it first basis for relief, Plaintiff requests statutory damages pursuant to §§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II). See *Cable/Home Communication Corp. v. Network Production, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990). Where both statutes have been violated, some Ninth Circuit courts have chosen to award damages pursuant only to § 605(e)(3)(C)(i)(II). *See Kingvision Pay-Per-View, Ltd. v. Ortega,* 2002 U.S. Dist. LEXIS 24305, *6 (N.D. Cal. 2002). However, it is not unheard of for courts in this circuit to award damages pursuant to both statutes. See, *Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.*, 1996 U.S.

Dist. LEXIS 8686 (N.D. Cal. 1996).

Under Title 47 U.S.C. Section 605(e)(3)(c)(II), the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and no more than $10,000.00.

To determine appropriate statutory awards, Ninth Circuit courts have considered many factors, and these factors often overlap with the factors for enhancing damages. See generally ***Universal Sports Network, Inc. v. Jimenez***, 2002 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002) (considering intent to realize personal gain, repeat offenses, and the extent of the rebroadcast); ***Kingvision Pay-Per-View, Ltd. v. Rivers***, 2000 U.S. Dist. LEXIS 4338 (N.D. Cal. 2000) (considering repeat offenses, and awarding the statutory minimum only where one defendant was already out of business). Some courts will award the minimum amount automatically if the defendant profited less than $1,000.00 from pirating the fight. See ***Entertainment by J&J, Inc. v. Montecinos***, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002). However, this reasoning should only be used if the Plaintiff seeks restitution damages or substitutional relief by invoking Section 605(e)(3)(C)(I) for actual damages. Other courts will award anywhere from $2,000.00 to $10,000.00 as a starting point. See ***Joe Hand Promotions, Inc. v. Dailey***, 2003 U.S. Dist. LEXIS 4091 (N.D. Cal. 2003); ***Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.***, 1996 U.S. Dist. LEXIS 8686 (N.D. Cal. 1996).

Yet it is respectfully submitted that *the most* important factor in assessing damages is the deterrent effect of that the award. See generally ***Trademark & Satellite Acts***, **P.L.-**6678, 1988 *U.S. Cong. & Admin. News* 7, 5577, 5658. Many courts factor deterrence into their damage enhancement for Section 605(e)(3)(C)(ii), although it may be more appropriate for the statutory damage calculation pursuant to Section 605(e)(3)(C)(II). See ***Joe Hand Promotions, Inc. v. Pete***, 1999 U.S. Dist. LEXIS 12651 (N.D. Cal. 1999) (awarding $5,000.00 to deter future transgressions); ***Entertainment by J&J, Inc. v. Montecinos***, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002) (awarding $5,000.00 to deter future transgressions).

We would like to draw the Court's attention to one case where the enhanced statutory damages awarded, based solely on the deterrent effect, were more than three times what the transgressor would have paid to properly commercially license the event. See ***Entertainment By J&J, Inc. v. Al-Waha Enterprises, Inc.***, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002). As noted by the Court, requiring the Defendant "to pay the price it would have been charged to obtain legal

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
DEFAULT JUDGMENT BY THE COURT
CASE NO. CV 08-1866 SI
PAGE 6

authorization to display the Event does nothing to accomplish this objective of the statute." *__Id.__*
Accordingly, it is respectfully submitted an award of the *enhanced* statutory damage *minimum*
($10,000.00) is a necessary baseline amount this Court should consider adopting to effectively deter
parties such as the Defendant from stealing proprietary programming.  Next, Plaintiff respectfully and
additionally requests enhanced damages pursuant to Sections 553(c)(3)(B) and 605(e)(3)(C)(ii).
Section 605(e)(3)(C)(ii) advises awarding up to $100,000.00 where "the violation was committed
willfully and for the purposes of direct or indirect commercial advantage or private financial gain . .
."  In similar circumstances, Section 553(c)(3)(B) will award an aggrieved Plaintiff up to $50,000.00.
"Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an
indifference for its requirements.'"  *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107,
114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)).

To determine intent for commercial or private gain, 9th Circuit courts often look for evidence
of a cover charge, increased price of food/drinks, advertisements, or the number of patrons in
attendance.  See *Entertainment By J&J, Inc. v. Perez*, 2000 U.S. Dist. LEXIS 17709 (N.D. Cal.
2002); *Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 U.S. Dist. LEXIS 162 (N.D. Cal. 2000).
However such requirements are largely illogical and inconsistent with the very nature of the
infringing activity.  Commercial signal pirates are looking to avoid, not attract, detection for their
unlawful acts, and have no financial investment in the programming they are unlawfully exhibiting.

Mindful of this, Courts today are now looking at the act interception and not promotion of the
event itself in calculating appropriate damages.  For instance in *Al-Waha*, the plaintiff *did not*
provide evidence of a cover charge or advertisements of the subject fight. 219 F. Supp. 2d at 776.
Nevertheless, the Court rightfully awarded enhanced damages to the aggrieved party plaintiff.  *Id*. at
777.  "Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view
events and the low probability that a commercial establishment could intercept such a broadcast
merely by chance, however, courts have held conduct such as that of [the Defendant] . . . to be willful
and for the purposes of direct or indirect commercial advantage or private financial gain."  *Id*. at 776
(citing *Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc.* No. 2, 172 F. Supp. 2d 810, 812
(S.D.W.Va. 2001); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490;
*Time Warner Cable v. Taco Rapido Restaurant*, 988 F. Supp. 107, 111.  Enhanced statutory

damages should likewise be awarded in the instant action now before this Honorable Court.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
DEFAULT JUDGMENT BY THE COURT
CASE NO. CV 08-1866 SI
PAGE 7

## **CONCLUSION**

The unauthorized interception, receipt and broadcast of the *Program* and other closed-circuit programming threatens the economic viability of the promotions industry. There are no countervailing social or policy considerations that justify the unauthorized interception of these broadcasts. See ***ON/TV* of *Chicago v. Julien***, 763 F.2d 839, 843 (7th Cir. 1985); ***Subscription Television of Greater Washington v. Kaufman***, 606 F. Supp. 1540, 1544 (D.D.C. 1985).

As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose its legitimate commercial customers which are unwilling and financially unable to compete with those unauthorized locations, such as COCINA MEXICANA A/K/A SMILIN JACKS, which exhibit sports and other closed-circuit programming in an unlicensed manner. Because these unauthorized commercial establishments offer programming to their patrons free of charge (or for a fee which is less than the authorized establishments charge), the legitimate commercial establishments cannot attract paying customers to offset their sizeable investments in commercial licensing and event promotion, and as a result, and incur substantial financial loss (therefore eliminating the prospect that they will continue purchasing commercial exhibition licenses from the Plaintiff in the future).

Theft of closed-circuit broadcasts, such as the *Program*, by unauthorized commercial establishments, such as COCINA MEXICANA A/K/A SMILIN JACKS, adversely impacts both Plaintiff and its lawful customers. Plaintiff pays substantial fees to the promoters of the events to obtain the exhibition rights to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's *exclusive* source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit boxing and entertainment programming such as the *Program*. The corrosive effect of commercial signal piracy permanently destroys of Plaintiff's lawful customer base. See ***Cox Cable Cleveland Area, Inc. v. King***, 582 F. Supp. 379, 381 (E.D. Ohio 1983).

Further, as a direct and proximate result of piracy, Plaintiff suffers severe damage to its goodwill and professional reputation, and has invariably lost its right and ability to control and receive fees for transmission of the *Program*. See ***Quincy Cablesystems, Inc.,*** *640 F.Supp*. at 1161. When

negotiating sublicense fees, Plaintiff represents to commercial establishments that it exercises supervision and control over the commercial distribution of its programming.  When an unauthorized commercial establishment intercepts, receives, and broadcasts closed-circuit programming, such as the *Program*, Plaintiff's reputation and goodwill suffers irreparable damage with its existing and prospective commercial customers from what appears to be a misrepresentation of such capabilities on its own part.  Ultimately, piracy simply devaluates the product being lawfully developed, marketed, licensed, or sold to the detriment and severe injury of all, and to the closed-circuit distributors in particular.

Clearly, Plaintiff should receive just and substantial compensation from the Defendant for these losses suffered.  Modest awards of statutory damages cannot meet that test.  Damages calculated focused on the ill-gotten gains derived by the pirate as opposed to the injury inflicted will never meet that test.

Rather, the sustenance of Plaintiff's small family business concern depends upon the willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming, and the Courts' willingness to deal fairly but ever most firmly with the rising tide of theft of Plaintiff's intellectual property.

Commercial piracy signal is nothing less than outright thievery and a firm judicial hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

Respectfully submitted,

Dated: July 18, 2008

*/s/ Thomas P. Riley*
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
By: Thomas P. Riley
Attorneys for Plaintiff
J & J Sports Productions, Inc.

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. CV 08-1866 SI**
**PAGE 9**

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 18, 2008, I served:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Bernard Joseph Bronson (Defendant)
32681 Mission Blvd.
Hayward, CA 94544

Ernest L. Anderson, Esquire
Law Offices of Ernest L. Anderson
22693 Hesperian Blvd., Suite 175
Hayward, CA 94541

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 18, 2008, at South Pasadena, California.

Dated: July 18, 2008                    */s/ Emily Stewart*
                                         **EMILY STEWART**

Thomas P. Riley, SBN 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J & J Sports Productions, Inc.,** | **Case No.  CV 08-1866 SI** |
| **Plaintiff,** | **DECLARATION OF THOMAS P. RILEY IN SUPPORT OF PLAINTIFF'S** |
| **vs.** | **APPLICATION FOR DEFAULT JUDGMENT BY THE COURT** |
| **Bernard Joseph Bronson, et al.** | **AGAINST DEFENDANT BERNARD JOSEPH BRONSON, INDIVIDUALLY** |
| **Defendant.** | **and d/b/a COCINA MEXICANA A/K/A SMILIN JACKS** |

To:  The Clerk of the above-entitled Court:

I, Thomas P. Riley, declare as follows:

1.      My firm and I are counsel to J & J Sports Productions, Inc., in the above-entitled action.

2.      The Defendant had not appeared in this action and has not responded to the Complaint served upon him within the time permitted by law.

3.      Defendant is not infant, incompetent person, or a person in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

///

///

4.    On June 20, 2008, a Request for Entry of Default was filed with the Court regarding Defendant Bernard Joseph Bronson, individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks, the instant Defendant.

5.    Default was entered on June 25, 2008, against Defendant Bernard Joseph Bronson, individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks.

6.    This action involves a claim for damages by Plaintiff J & J Sports Productions, Inc., against Defendant Bernard Joseph Bronson, individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks for misappropriation of a Championship Boxing Program in violation of 47 U.S.C. Section 605, *et seq*., and 47 U.S.C. Section 553, *et seq*.  Plaintiff further alleges that the Defendant committed tort of Conversion.  Plaintiff seeks relief on its causes of action as set forth below.

7.    Plaintiff respectfully requests judgment in its favor and that damages be awarded to it, as follows:

a.  Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii):     $     50,000.00

b.  Violation Title 47 U.S.C. 553 (b)(2) and (c)(2)(c):     $     50,000.00

c.  Tort of Conversion:     $     800.00

Total Amount of Requested Judgment:     $     100,800.00

I declare under the penalty of perjury of the laws of the State of California and the United States of America that the above is true and correct.

Respectfully submitted,

Dated:  July 18, 2008     */s/ Thomas P. Riley*
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
BY: Thomas P. Riley
Attorneys for Plaintiff
J & J Sports Productions, Inc.

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT**
**CV 08-1866 SI**
**PAGE 2**

**PROOF OF SERVICE (SERVICE BY MAIL)**

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 18, 2008, I served:

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Bernard Joseph Bronson (Defendant)
32681 Mission Blvd.
Hayward, CA 94544

Ernest L. Anderson, Esquire
Law Offices of Ernest L. Anderson
22693 Hesperian Blvd., Suite 175
Hayward, CA 94541

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 18, 2008, at South Pasadena, California.

Dated: July 18, 2008                    */s/ Emily Stewart*
                                        **EMILY STEWART**

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT**
**CV 08-1866 SI**
**PAGE 3**

1  Thomas P. Riley, SBN 194706
   LAW OFFICES OF THOMAS P. RILEY, P.C.
2  First Library Square
   1114 Fremont Avenue
3  South Pasadena, CA 91030-3227

4  Tel: 626-799-9797
   Fax: 626-799-9795
5  TPRLAW@att.net

6  Attorneys for Plaintiff
   J & J Sports Productions, Inc.

7
                    UNITED STATES DISTRICT CO URT
8                   NORTHERN DISTRICT OF CALIFORNIA

9

10 J & J Sports Productions, Inc.,          | CASE NO. CV 08-1866 SI

11          Plaintiff,                       | DECLARATION OF AFFIANT

12          vs.

13
   Bernard Joseph Bronson, et al.
14
            Defendant.
15

16

17     TO THE CLERK OF THE COURT:

18

19     A true and correct copy of the Declaration of Affiant is attached hereto and made part hereof.

20

21
                                    Respectfully submitted:
22

23

24
   Date:  July 18, 2008              /s/ Thomas P. Riley
25                                   LAW OFFICES OF THOMAS P. RILEY, P.C.
                                     By: Thomas P. Riley
26                                   Attorneys for Plaintiff
27                                   J & J Sports Productions, Inc.

28


   DECLARATION OF AFFIANT
   CASE NO.  CV 08-1866 SI
   PAGE 1

STATE OF _California_

COUNTY OF _Alameda_

## **AFFIDAVIT**

I, the undersigned, being duly sworn according to law deposes and says, that on _April_ _9th_ , 200_5_ at
_____ (date)

_8:15 am,_ p.m./a.m, I entered the _Cocina Mexicana_
(time) _____ (trade name of establishment)

located at _32681_ _Mission Blvd. Hayward, CA 94544_ .
(street address, city, state, zip code)

I paid a cover charge of $ _0_ to enter this establishment. I ordered _0_ Drink(s) from the

Bartender/ Barmaid/ Waitress who was described as _Female, Angelica or Angelina, Latina,_

_approx 35-45 yrs, long black hair pulled back in a braid, approx 5'2"_
(name, sex, age, ethnicity, distinguishing characteristics)

I observed _2_ televisions located inside this establishment. The televisions can be
(total # of TVs)

described as follows: _20' Color & 30' color located #1_
(make, model, and size of each TV)

_above front counter by entrance, #2 Opposite of front door above or on what_
(specific location of each TV)

_appeared to be an antique white piece of furniture with glass front_
At the time I was inside the above establishment, I observed the following program on the above televisions: _____

_HBO @ PPV Boxing between Barrera & Fana. Immediately prior_
_to round #1. Barrera was wearing Red trunks @ white stripe down_
_hip. Announcers were wearing black tuxes. Each with a bow tie. Their_
_was a KO within the first 2 min. of Round #1. Around 8:21pm_
(names of fighters or commentators, trunk colors of each fighter/attire of commentators, time remaining in round)

I also observed the following distinguishing items inside the establishment: _____

_A rug hung on the wall to Right of TV #2 depicting 'The Last Supper'_
_A Hispanic peasant outfit was affixed to the wall to the left of TV#2._
_Rugs, Sombreros, mini guitars hung on walls + ceiling._
_'Diner' style Kitchen order counter. Order 'wheel' hungup on Right of counter._
(posters, decorations, pool tables, memorabilia, etc.)

This establishment rates _Good_ .
(Good, Fair, Poor)

Page 1 of 2

The capacity of this establishment is approximately __50__ people. At the time of my appearance I

counted the number of patrons three (3) separate times. The head counts were __36__,

__34__, __32__.

I left the above establishment at __8:40__ p.m/a.m on __April 9, 2005__.
    (time)                              (date)

I also observed the following license plates in the parking lot

1) __2HWX839__    2) __2WKV141__    3) __5HUA484__

4) __2RML599__    5) __3CBT913__    6) __2XYB463__

Date: __April 10, 2005__
      __1:50 a.m.__

Signature of Investigator

__Lori A. Stine__
Name of Investigator (Printed)

__IPIC__
Investigative Agency

_____
Telephone Number of Agency

## NOTARY

On __april 10, 2005__, before me, __CAroline G. Rodriguez__ Notary Public,
personally appeared __Lori ANN Stine__                    [   ] personally known to me --- or --- [N] proved to me
on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person or the entity
upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary
Comm. Expires Aug. 12, 2006

CAROLINE G. RODRIGUEZ
Commission # 1369415
Notary Public - California
Alameda County
My Comm. Expires Aug 12, 2006



# CHECKLIST FOR DISCOVERED PIRATE
## Federal Anti-Piracy Assignment

1. My Name and Date of Birth: _Lori A. Stime_    _10-21-66_

2. My Company Name (if any): _____

3. Pirate's Name & Address (Commercial Establishment):

   _Cocina Mexicana_

   _32681_    _Mission Blvd._    _Hayward, CA 94544_

**NOTE: IT IS IMPORTANT TO NOTE THE COMPLETE NAME AND ADDRESS, INCLUDING <u>STREET NUMBER</u>, CITY, STATE AND ZIP CODE. PLEASE INCLUDE NORTH, SOUTH, EAST, WEST, AVENUE, STREET, BOULEVARD, ETC. WHEN FILLING OUT THE STREET ADDRESS.**

4. Did the establishment advertise or promote the telecast in any way? If so, please describe any banners, flyers, posters or any other promotion you observed.

   _No_

5. Was there an admission or cover charge? _No_

   If so, how much? _____

6. During my visit to the establishment, I observed the boxing match featuring

   _Barrera_ (First Boxer) vs. _Tana_ (Second Boxer).

   The first boxer's trunks are colored:. _Red with White Stripe_.

   The second boxer's trunks are colored: _unsure_.

   The portion of the broadcast of the fight appeared to be in the _1st_ round.

   I also observed that the ring mat displayed the _Numonoff (?) a GoldenBoy?_ logo and

   that the corner posts displayed the _unsure_ logo.

7. During my visit to the establishment, I observed the announcers discussing the fight card. The announcers were wearing _black tuxedos, white shirt - bow ties_.

   I noticed that the _HBO PPV_ logo appeared on their microphones.

   Specifically, the announcers were talking about _(could only hear bits) Tall balding man @ tux speaking to Barrera thru interpeter "Is someone rooting 4 you"(?)_.

8. I observed a total of _2_ television sets.

_"Any chance you'll move up past..."_

Copyright © 2001

**CHECKLIST: Page 2**

9.    Of the _____2_____ television sets that I observed, _____2_____ were displaying the telecast. _____∅_____ number of the TV's I observed were big screens.

10.    Provide a detailed description of at least one employee (name, gender, physical description and if possible, that employee's position with the establishment):

Angelica (or Angelina) 5'3" Hispanic Long black hair all pulled back + braided. No bangs. Late 30's or 40's.

_____

_____

_____

_____

11.    Establishment description (interior/exterior, unique features, pool table, lighting, decorations, etc.)

Enter Main Bldg + then establishment entrance is inside. Door is a sliding glass, patio door. Approx 10 booths + 3 small tables. 1 TV above/beverage counter near door. Mexican decor. Mans peasant outfit hung on wall to left of 2nd TV. Rug of 'The Last Supper' on the right of 2nd T.V. Sombrero's + mexican type ukelele instruments hung on ceiling. 'Diner' Style Kitchen order counter with order receipt "Wheel".

_____

More: Around 8:21 fight ended in 1st round. Saw a tall, balding male announcer dressed in black tux @ black bowtie interviewing Barrera who was drinking a bottle of water with a red label. Someone put a gold necklace around Barrera's neck + Barrera kissed the charm on the necklace.
Near the end, I saw ~~in a black screen~~ footage outside in dark @ cars driving by. Noticed old fashioned lamp posts. Then on black screen saw: AOLLatino ESPNDDeportes.com
                          Univision.com
                          Ring Magazine
                          Boxing Digest

Copyright © 2001



# California Department of Alcoholic Beverage Control
## *License Query System Summary*
## *as of 4/10/2005*

| License Information | |
| --- | --- |
| **License Number: 379564** | **Status: ACTIVE** |
| **Primary Owner: BRONSON BERNARD JOSEPH** | |
| **ABC Office of Application: OAKLAND** | |
| Business Name | |
| **Doing Business As: SMILIN JACKS** | |
| Business Address | |
| **Address: 32681 MISSION BLVD** | **Census Tract: 4380.** |
| **City: HAYWARD    County: ALAMEDA** | |
| **State: CA    Zip Code: 94544** | |
| Licensee Information | |
| **Licensee: BRONSON BERNARD JOSEPH** | |
| License Types | |
| **1) License Type: 47 - ON-SALE GENERAL EATING PLACE** | |
| **License Type Status: ACTIVE** | |
| **Status Date: 10-DEC-2001** | **Term: 12 Month(s)** |
| **Original Issue Date: 10-DEC-2001** | **Expiration Date: 31-AUG-2005** |
| **Master: Y    Duplicate: 0    Fee Code: P40** | |
| **Condition: OPERATING RESTRICTIONS** | |
| **License Type was Transferred On:    From: 298908** | |
| **2) License Type: 30 - TEMPORARY PERMIT** | |
| **License Type Status: ISSUE** | |
| **Status Date: 13-AUG-2001** | **Term: 0 Month(s)** |
| **Original Issue Date:    Expiration Date:** | |
| **Master: Y    Duplicate: 0    Fee Code: NA** | |
| Current Disciplinary Action | |
| *. . No Active Disciplinary Action found . . .* | |
| Disciplinary History | |
| **Violation Date: 24-SEP-2004   Reg. Number: 04058282   Cleared On:24-FEB-2005** | |
| **Reporting Agency: HAYWARD P.D.** | |
| **1) Charge Date: 24-SEP-2004** | **Section Violated: 24200(a&b)** |
| **Charge: GROUNDS FOR ACTION** | |
| **2) Charge Date: 24-SEP-2004** | **Section Violated: 25658(a)** |
| **Charge: SALE TO MINOR (DECOY)** | |

| Proceeding Status: COMPLETE   Decision: SUSPENDED |
|---|
| Suspension Days: 15  Stayed Days   POIC/Fine: 3000 |
| Suspension Start Date:   Suspension End Date: |
| Hold Information |
| . . No Active Holds found . . . |

*- - - End of Report - - -*

For a definition of codes, view our glossary.





## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 18, 2008, I served:

## DECLARATION OF AFFIANT

On all parties referenced by enclosing true copies thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Bernard Joseph Bronson (Defendant)
32681 Mission Blvd.
Hayward, CA 94544

Ernest L. Anderson, Esquire
Law Offices of Ernest L. Anderson
22693 Hesperian Blvd., Suite 175
Hayward, CA 94541

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 18, 2008, at South Pasadena, California.

Dated: July 18, 2008

*/s/ Emily Stewart*
**EMILY STEWART**

**DECLARATION OF AFFIANT**
**CASE NO. CV 08-1866 SI**
**PAGE 2**

1   **Thomas P. Riley, SBN 194706**
    **LAW OFFICES OF THOMAS P. RILEY, P.C.**
2   **First Library Square**
    **1114 Fremont Avenue**
3   **South Pasadena, CA 91030-3227**

4   **Tel:  626-799-9797**
    **Fax: 626-799-9795**
5   **TPRLAW@att.net**

6   **Attorneys for Plaintiff**
    **J & J Sports Productions, Inc.**

7

8                   **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**

9

10  **J & J Sports Productions, Inc.,**          **Case No. CV 08-1866 SI**

11              **Plaintiff,**                   **ORDER (Proposed)**

12              **vs.**

13

14  **Bernard Joseph Bronson, et al.,**

15              **Defendant.**

16

17          Default having been entered in this action on June 25, 2008 against Bernard Joseph Bronson,

18  individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks, and the application for and declarations in

19  support of default judgment having been filed on or about July 18, 2008, and having been served on the

20  Defendant and notice given and no appearance by the Defendant having been made in person or in

21  writing and all other requirements for entry of default judgment pursuant to Federal Rule Civil

22  Procedure 55 having been certified to by Plaintiff's counsel, now therefore,

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**ORDER (Proposed)**
**CASE NO. CV 08-1866 SI**
**PAGE 1**

**IT IS HEREBY ORDERED AND ADJUDGED that JUDGMENT** be entered against Defendant Bernard Joseph Bronson, individually and d/b/a Cocina Mexicana a/k/a Smilin Jacks and in favor of J & J Sports Productions, Inc., as follows:

|   |   |   |
|---|---|---|
| a. | For the Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii): | $ 50,000.00 |
| b. | For the Violation of Title 47 U.S.C. 553 (b)(2) and (c)(2)(c): | $ 50,000.00 |
| c. | For the Tort of Conversion: | $    800.00 |
|   | Total: | $ 100,800.00 |

**Accordingly, JUDGMENT IS ENTERED IN ACCORDANCE WITH THE FOREGOING IN THE SUM OF $100,800.00.**

**ITS SO ORDERED**:

_____          Dated:_____
**The Honorable Susan Illston**
**United States District Court**
**Northern District of California**

///
///
///
///
///
///
///

**ORDER (Proposed)**
**CASE NO. CV 08-1866 SI**
**PAGE 2**

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 18, 2008, I served:

**ORDER (PROPOSED)**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Bernard Joseph Bronson (Defendant)
32681 Mission Blvd.
Hayward, CA 94544

Ernest L. Anderson, Esquire
Law Offices of Ernest L. Anderson
22693 Hesperian Blvd., Suite 175
Hayward, CA 94541

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 18, 2008, at South Pasadena, California.

Dated: July 18, 2008                    */s/ Emily Stewart*
                                        **EMILY STEWART**

**ORDER (Proposed)**
**CASE NO. CV 08-1866 SI**
**PAGE 3**